UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO.   6:08-cr-211-Orl-18DAB

DAVID MENENDEZ

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Brian

Albritton, United States Attorney for the Middle District of Florida, and the defendant,

David MENENDEZ, and the attorney for the defendant, Sid Fleischman, mutually agree

as follows:

A.    **Particularized Terms**

1.    Count(s) Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment.

Count One charges the defendant with using a facility and means of interstate

commerce to induce or persuade a minor to engage in sexual activity, in violation of 18

U.S.C. § 2422(b).

2.    Minimum and Maximum Penalties

Count One is punishable by a mandatory minimum term of imprisonment

of 10 years up to life, a fine of $250,000, a term of supervised release of any number of

years up to life, and a special assessment of $100 per felony count, said special

assessment to be due on the date of sentencing.  With respect to certain offenses, the

Defendant's Initials _____                    AF Approval _____
                                                      Chief Approval _____

Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First: That the Defendant knowingly used a computer and the internet to attempt to persuade, induce, entice, or coerce an individual under the age of eighteen (18) to engage in sexual activity, as charged;

Second: That the Defendant believed that such individual was less than eighteen (18) years of age;

Third: That if the sexual activity had occurred, the Defendant could have been charged with a criminal offense under the law of Florida; and

Fourth: That the Defendant acted knowingly and willfully.

4. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this agreement.

5. Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's

Defendant's Initials _____ 2 Chief Approval _____

applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

6. Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _Dm_

3

Chief Approval _TAM_

7.      Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.      Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2428, whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.  Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which

Defendant's Initials _____          4          Chief Approval  _TBM_

defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(3), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then

Defendant's Initials _Am_       5       Chief Approval _TMM_

the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

9.    Sex Offender Registration and Notification

The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

Defendant's Initials _DM_                    6                    Chief Approval _TBH_

B.    **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987), including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

    2.    Supervised Release

        The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

    3.    Sentencing Information

        The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information,

Defendant's Initials _____       7       Chief Approval _____

including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and

Defendant's Initials __*DM*__          8          Chief Approval __TMM__

acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5.     Defendant's Waiver of Right to Appeal and
       Right to Collaterally Challenge the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _____        9        Chief Approval _____

6.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and

Defendant's Initials _____          10          Chief Approval _____

the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

## FACTS

On August 21, 2008, DAVID MENENDEZ, using a username of "somebeach70," used a computer and the Internet, which are facilities and means of interstate commerce, to contact an undercover office who was working undercover as a 15 year-old female in a free public chat room (Yahoo).[1]  MENENDEZ told the undercover

---

[1] The undercover officer was a male. For purposes of this plea agreement, however, the undercover officer will be referred to as "she" when portions of the chats

Defendant's Initials _DM_          11          Chief Approval _TBM_

Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

    3.    <u>Elements of the Offense</u>

    The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| | |
|---|---|
| First: | That the Defendant knowingly used a computer and the internet to attempt to persuade, induce, entice, or coerce an individual under the age of eighteen (18) to engage in sexual activity, as charged; |
| Second: | That the Defendant believed that such individual was less than eighteen (18) years of age; |
| Third: | That if the sexual activity had occurred, the Defendant could have been charged with a criminal offense under the law of Florida; and |
| Fourth: | That the Defendant acted knowingly and willfully. |

    4.    <u>No Further Charges</u>

    If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this agreement.

    5.    <u>Guidelines Sentence</u>

    Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's

Defendant's Initials _____     2     Chief Approval _____

---

officer, "I bet you are hot."  MENENDEZ then told the undercover officer that he was a 38 year-old male from Daytona.  The undercover officer informed MENENDEZ that "she" was a 15 year-old female.  MENENDEZ replied, "nice…pics."  The undercover officer sent a photograph from an undercover profile.  MENENDEZ replied "nice" and asked what part of Florida the undercover officer lived in.  The undercover officer replied, "Rockledge."  MENENDEZ then asked if the undercover officer met guys there.  The undercover officer replied, "sometimes."  MENENDEZ asked, "30ish yr old married guys."

    MENENDEZ then told the undercover officer that he loved "making out" and asked if the undercover officer liked being "kissed all over."  MENENDEZ then wanted to know what the undercover officer liked sexually.  MENENDEZ told the undercover officer that MENENDEZ wished the undercover officer lived closer, so that MENENDEZ could pick "her" up right now.  MENENDEZ said, "he would find a little quiet spot in Rockledge park my car ….lol."

    At this point, MENENDEZ requested that the two of them share some photographs with each other.  MENENDEZ activated the photo share portion of Yahoo messenger, and the undercover officer sent him two photographs from an undercover profile.  MENENDEZ also sent the undercover officer a photograph of himself.  Under this photograph was the name Dave MENENDEZ.  After MENENDEZ viewed the photographs, MENENDEZ told the undercover officer, "damn you are soooo hot."  MENENDEZ told the undercover officer that "she" was hotter than this wife and that

---

between MENENDEZ and the undercover officer are summarized.

Defendant's Initials _____          12          Chief Approval _____

MENENDEZ would love to kiss the undercover officer on her neck. MENENDEZ then "what if my hand happened to slip under" the undercover officer's shirt while they were kissing. MENENDEZ told the undercover officer, "we should meet up one day." MENENDEZ asked how he could contact the undercover officer. The undercover officer told MENENDEZ to send an e-mail.

MENENDEZ then told the undercover officer that he could really use some company today and that "we could have some fun together." When the undercover officer asked "like," MENENDEZ replied "hanging out in the back seat of his car." MENENDEZ told the undercover officer that he would kiss the undercover officer's neck and "alllll over." MENENDEZ told the undercover officer, "I bet you'd taste soooo good...lol."

MENENDEZ then began asking the undercover officer where they could meet if he came to Rockledge. MENENDEZ asked if the undercover officer was home alone and if he could come over. The undercover officer told MENENDEZ that he could not, because "she" had noisy neighbors. MENENDEZ replied that he could use the back door to the residence. MENENDEZ then began to ask about past sexual experiences and if the undercover officer enjoyed it. MENENDEZ asked if the undercover officer would mind meeting him and if it mattered that he was married. The undercover office told MENENDEZ that "she" did not want MENENDEZ's wife to be mad at "her" if MENENDEZ's wife found out. MENENDEZ replied, "it'll be our little secret." The undercover officer also said that if "her" parents found out it would not be good.

MENENDEZ then told the undercover officer that making out would not be enough if they met and that he wanted to "go down" on the undercover officer. The

Defendant's Initials _____     13     Chief Approval _____

undercover officer told MENENDEZ that had never happened to "her" before.
MENENDEZ replied, "then you go down on me." MENENDEZ asked if the undercover
office liked to do it (meaning oral sex). The undercover officer told MENENDEZ "not
really." MENENDEZ replied, "you don't have to do it that with me, but I want to do it for
you." MENENDEZ told the undercover officer, "you'll love it, feeling my tongue down
there" and "hearing me kissing it, sucking on it." MENENDEZ then asked, "you gonna
squirt me." MENENDEZ then asked if the undercover officer was "shaved down there."
The undercover officer replied, "trimmed." MENENDEZ said, "I'm sooo horny right
now."

MENENDEZ tried to get the undercover officer to send him other photographs.
The undercover officer told MENENDEZ that the photographs could not be sent. The
undercover officer then told MENENDEZ that "she" had to go and get dinner ready for
"her" mother. MENENDEZ asked if the undercover officer could add MENENDEZ to
the undercover officer's buddy list. The undercover officer agreed, and the
conversation ended.

After the first conversation, the undercover office conducted a search through
the Florida Driver And Vehicle Information Database. This search produced the
photograph on the driver's license of DAVID MENENDEZ, which matched the
photograph sent by "somebeach70."

On August 22, 2008, the undercover officer received an instant message from
MENENDEZ who again was using the username of "somebeach70." During the
conversation, MENENDEZ asked what the undercover officer was doing today.
MENENDEZ asked if the undercover officer lived in Rockledge. The undercover officer

Defendant's Initials _____        14        Chief Approval _____

replied that "she" did. MENENDEZ asked the undercover officer if the undercover officer "wanted to hang." The undercover officer told MENENDEZ that "her" mother was taking "her" to the movies tonight so "she" could not.

MENENDEZ then asked if the undercover officer started school yet and how "she" got home from school. When the undercover officer told MENENDEZ that "she" took the bus, MENENDEZ stated, "I should pick you up one day." MENENDEZ asked if the undercover officer was in the kissing mood after school. MENENDEZ told the undercover officer if he drove all the way down there "she" had better be in the mood. MENENDEZ asked if the undercover officer would wear something sexy when he visited. MENENDEZ then told the undercover officer he wished he could take the undercover officer to the movies and said "I'll be all over you." MENENDEZ told the undercover officer that "her" friends would probably see them making out at the movies. When the undercover officer told him "no," MENENDEZ replied, "you never know."

On September 2, 2008, the undercover officer received an instant message from MENENDEZ over the Internet. MENENDEZ asked, "how's it going." The undercover officer told MENENDEZ that "she" was doing homework. MENENDEZ asked how the undercover officer liked school and "her" teachers. MENENDEZ stated that he was at his office and asked the undercover officer to help him and to come play with him. MENENDEZ told the undercover officer that he would help "her" with English and French. MENENDEZ then told the undercover officer, "I can teach you about french kissing." MENENDEZ then told the undercover officer that he was a manager at a realtor's office and that he was bored. MENENDEZ wrote that he wished they could hang out on that day. MENENDEZ then sent the undercover officer a photograph of

Defendant's Initials _____       15       Chief Approval _____

two adults kissing. MENENDEZ then asked where the undercover officer's parents
were. When the undercover officer told MENENDEZ that they were working,
MENENDEZ asked, "how much time you have." The undercover officer told
MENENDEZ that "her" parents return home at 6:30 p.m. MENENDEZ then explained
that it would take him about an hour and a half to get here, but that if he lived closer he
would be right over.

MENENDEZ then began to send the undercover officer website links of videos of
people kissing. MENENDEZ asked the undercover officer if "she" was going to kiss him
like that. MENENDEZ then requested to see the undercover officer's photograph and
requested that the undercover officer photo share with him. The undercover officer
sent MENENDEZ a photograph from an undercover profile. The undercover officer
stated that "she" really wanted to make out with MENENDEZ. MENENDEZ then told
the undercover officer that he would send him a photograph of what he liked to do. The
first photograph sent by MENENDEZ was of an adult kissing the breast of a female.
The second photograph was of an adult white male performing oral sex on a female.
MENENDEZ asked, "can I kiss you there." MENENDEZ told the undercover officer that
"you'd really enjoy that." MENENDEZ wrote "I'm sooo hard right now...lol."

MENENDEZ then sent another photograph of an adult white male performing
oral sex on an adult white female. MENENDEZ told the undercover officer if "she" were
hugging MENENDEZ right now that "she" would "feel it." When the undercover officer
asked what she would feel, MENENDEZ replied "my cock." MENENDEZ told the
undercover officer that "she" could reach down and touch it. MENENDEZ then asked
for another photograph of the undercover officer.

Defendant's Initials _____       16       Chief Approval _____

At this point, the undercover officer lost the Internet connection. The undercover officer reactivated the web cam and continued the conversation with MENENDEZ. MENENDEZ asked where they had left off. The undercover officer replied "idk" (I don't know). MENENDEZ then requested that the undercover officer send him the photograph. The undercover officer sent one from an undercover profile. MENENDEZ then replied "so hot." MENENDEZ told the undercover officer, "I could just eat you up" and MENENDEZ asked if "she" would let him. MENENDEZ then asked what kind of things turned "her" on. The undercover officer told MENENDEZ that "she" guessed the things in the pictures that he had sent. At this point, the undercover officer told MENENDEZ that "she" had to go and the conversation ended.

On September 3, 2008, the undercover officer received another instant message from MENENDEZ over the Internet. MENENDEZ asked what "she" was doing. The undercover officer replied that "she" was finishing homework. MENENDEZ asked about "her" school and what "she" was doing now. When the undercover officer said "talking to you," MENENDEZ asked the undercover officer if "she" was home alone. MENENDEZ asked the undercover officer if "she" had a cell phone today. The undercover officer told MENENDEZ that "her" father had it. MENENDEZ told the undercover officer he wanted to make sure "she" would be there if he made the long drive. MENENDEZ told the undercover officer that he wished there was something fun to do. When the undercover officer replied "like what," MENENDEZ replied, "kissing me."

At this point, MENENDEZ sent the undercover officer another website link of a video showing people kissing. MENENDEZ told the undercover officer that the video

Defendant's Initials _____  17   Chief Approval _____

excited him and that he was getting him horny.  MENENDEZ asked if the undercover officer had ever kissed another girl and if "she" had thought about it.  When the undercover officer told MENENDEZ "no," MENENDEZ told "her" that he would not share his videos then.  The undercover officer told MENENDEZ that it was not "her" thing, and the conversation ended.

On September 5, 2008, the undercover officer received another instant message from MENENDEZ over the Internet.  MENENDEZ started the conversation by saying "hey baby."  During this chat, MENENDEZ's screen named read "david m."  MENENDEZ asked if the undercover officer was mad at him.  The undercover officer replied that "she" was not.  MENENDEZ asked the undercover officer if "she" had a cell phone.  The undercover officer told MENENDEZ that "her" father still had it.  MENENDEZ asked what the undercover officer was going to do that night and over the weekend.  When the undercover officer told MENENDEZ probably nothing, MENENDEZ said, "well I wish I was doing something."  When the undercover officer attempted to get MENENDEZ to clarify what he meant, MENENDEZ said "nothing."  The undercover officer told MENENDEZ that "she" had to go, and the conversation ended.

On September 8, 2008, The undercover officer received another instant message from MENENDEZ over the Internet.  MENENDEZ asked if the undercover officer was being good.  MENENDEZ asked what the undercover officer was doing.  The undercover officer replied that "she" was cleaning "her" room.  MENENDEZ asked if the guys in the chat room were hitting on "her."  The undercover officer replied, "kinda."  The undercover officer then asked MENENDEZ where he came up with the

Defendant's Initials _____     18     Chief Approval _____

screen name of "somebeach70." MENENDEZ told the undercover officer that he had just picked it up.

MENENDEZ then asked if the undercover officer had a cell phone. The undercover officer told MENENDEZ that "she" did. MENENDEZ asked if he could call "her" one day. The undercover officer told MENENDEZ that "she" did not talk long on the cell phone because the minutes were expensive. The undercover officer asked what MENENDEZ was doing that night. MENENDEZ replied that he was trying to meet someone tonight. When the undercover officer asked if he was meeting friends, MENENDEZ told the undercover officer "no just someone from the chat room." MENENDEZ asked "what about you, what are you doing tonight." MENENDEZ then asked if the undercover officer still wanted him "to go there." The undercover officer told MENENDEZ that it was up to him because he had to drive. MENENDEZ told the undercover officer that he could be there by 7:30 p.m. and asked what city "she" lived in. When the undercover officer said Rockledge, MENENDEZ replied "maybe tomorrow." MENENDEZ asked how the undercover officer got home from school and whether "she" would have a cell phone with "her" after school. The undercover officer asked MENENDEZ what he was thinking, and MENENDEZ replied, "meeting you right after school." MENENDEZ told the undercover officer that "I'm gonna shoot for that, but have to have a way to reach you to let you know I'm there."

At this point, the undercover officer provided MENENDEZ with an undercover phone number. MENENDEZ asked what time "she" left school. The undercover officer replied 2:45 p.m. MENENDEZ then asked where could they meet. The undercover officer suggested the ice-skating rink in Rockledge. MENENDEZ asked if they could

Defendant's Initials _____         19         Chief Approval _____

meet outside of it.  MENENDEZ told the undercover officer that he would be in a silver Mustang.  MENENDEZ asked for general directions on how to get there.  MENENDEZ told the undercover officer that he would call "her" when he arrived.

On September 9, 2008, at approximately 2:50 p.m., MENENDEZ called the undercover officer on the number that had been provided.  A female employee of the Brevard County Sheriff's Office took the call (hereinafter referred to as the "second undercover officer").  MENENDEZ asked the second undercover officer, "hi you out of school."  The second undercover officer told MENENDEZ that she was at home and could meet him "there" (ice rink).  MENENDEZ asked how long it would take her to get there.  The second undercover officer replied about ten minutes.  MENENDEZ told the second undercover officer that he was on a street that was not far from the skating rink.  MENENDEZ asked what the second undercover officer was wearing.  After being told that the second undercover officer would be wearing jean shorts and a green shirt, MENENDEZ told the second undercover officer that he would see her there in a few minutes.

After this conversation took place, agents from the Brevard County Sheriff's Office and special agents from United States Immigration and Customs Enforcement went to the Ice Plex, which is located on Roy Wall Blvd, Rockledge, in Brevard County, in the Middle District of Florida.  Law enforcement observed a silver Mustang traveling east on Roy Wall Blvd, past the Ice Plex and going into a subdivision that was located on eastside of the Ice Plex.  A few moments later, the Mustang was observed coming out of the subdivision, turning west on Roy Wall Blvd., and driving past the Ice Plex.

Defendant's Initials _____          20          Chief Approval _____

At this point, law enforcement pulled behind the Mustang, which had Florida license plate number of G178ZE, which earlier database checks had confirmed was owned by MENENDEZ's wife. Law enforcement stopped the vehicle at the intersection of Martin Drive and Fiske Blvd. After the vehicle was stopped, MENENDEZ was ordered out of the vehicle, and he was taken into custody. MENENDEZ was advised of his Miranda Rights. MENENDEZ advised that he understood his rights and signed the affidavit stating he would provide a statement.

During the subsequent interview, MENENDEZ, in substance, stated the following: MENENDEZ admitted to talking to the child on line. MENENDEZ stated he had only been talking to her for a week or so, whenever she was on-line. MENENDEZ stated that the child made the arrangements to meet with him today. MENENDEZ said they did not have any special plan and that he was going to take her out to eat. MENENDEZ advised he and the child talked about "kissing" but nothing sexual. At this point in the interview, MENENDEZ was shown a copy of the chat log that he had with the child. MENENDEZ viewed the chats and acknowledged that those were the chats he had with the child. MENENDEZ advised that his screen names were "somebeach70" and "david m." MENENDEZ admitted that he was talking in a sexual manner to the child. MENENDEZ was shown some of the pornographic photos that he had sent the child. MENENDEZ was asked whether he had sent those photographs to the child. MENENDEZ stated that he had. MENENDEZ stated that he was going through some financial trouble and that what he had done was "totally wrong." MENENDEZ explained that he had children of his own and that it was totally out of his character to do this. MENENDEZ explained that he did all of his on-line chatting from

Defendant's Initials _____        21        Chief Approval _____

his place of employment.  MENENDEZ then stated, "he's never done anything like this before and all the away up here I had the whole thing in my mind don't do it don't do it, I have four kids and a new born and I know I shouldn't do that."  MENENDEZ was asked what would make him talk to a 15 year-old like that.  MENENDEZ explained that he has a lot of issues with pornography.  MENENDEZ said, "he just destroyed his family and reputation, he said it didn't matter at this point that he made the decision to do what I did and he knew in the back of his mind this would more than likely happen."  MENENDEZ was asked what made him come.  MENENDEZ said that he did not know and that he should not have done it.

At this point in the interview, MENENDEZ was advised that his vehicle had been searched and that a white piece of paper had been found with the name and phone number of the child on it along with the name of the street the Ice Plex was located.  MENENDEZ admitted to writing that note.  MENENDEZ also admitted that he drove his vehicle past the ice rink about two or three times looking for the child.  In closing, MENENDEZ stated he has talked to younger girls on-line in the past, but not to the extent that this conversation went.

After the interview was completed, MENENDEZ was transported to Brevard County Sheriff's Office.  While at this office, MENENDEZ advised that he chatted from his office using his personal laptop computer.  MENENDEZ advised this computer was located in his office on his desk.  MENENDEZ then gave verbal and written consent to seize and search the computer, which was described as being an Acer laptop being gray and black in color.

Defendant's Initials _____        22        Chief Approval _____

It is a felony in the State of Florida, among other things, for a person to, as MENENDEZ sought to do, engage in sexual activity with a person 12 years or age or older but less than 16 years of age or to encourage or entice a person less than 16 years of age to engage in an act involving sexual activity.

10.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _18th_ day of _November_, 2008.

A. BRIAN ALBRITTON
United States Attorney

By: _____

_____
DAVID MENENDEZ
Defendant

Carlos A. Perez-Irizarry
Assistant United States Attorney

_____
Sid Fleischman
Attorney for Defendant

_____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _____

23

Chief Approval _____